**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| AMEENA HUSSAIN, | ) | |
| *on behalf of herself and* | ) | Civil Action No.: |
| *others similarly situated*, | ) | |
| | ) | Class Action |
| | | Complaint |
| Plaintiff, | ) | |
| | ) | Jury Trial Demanded |
| v. | ) | |
| | ) | |
| MORTGAGEPROS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CLASS ACTION COMPLAINT**

1. Ameena Hussain ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against MortgagePros LLC ("Defendant").

2. This class action arises from Defendant's persistent disregard for federal and Washington State law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Washington Automatic Dialing and Announcing Device Act, Wash. Rev. Code § 19.158.010–19.158.901 ("ADAD Act"), the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.060, and the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, et seq.

3. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4. Now, Plaintiff brings this class action on behalf of herself, and all others harassed by Defendant and its unlawful telemarketing tactics.

1

## PARTIES

5.      Plaintiff, Ameena Hussain, is a natural person and a citizen of Washington. She is domiciled in Washington.

6.      Defendant, MortgagePros, LLC, is a Michigan limited liability company with its principal place of business at 880 W. Long Lake Road, Suite 300, Troy, Michigan 48098.

## JURISDICTION AND VENUE

7.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8.      This Court has personal jurisdiction over Defendant and venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District as the messages at issue were sent from this District.

## BACKGROUND

*The Telephone Consumer Protection Act*

9.      Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

10.      "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a

straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

11. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

12. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

13. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

14. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

15. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

16. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id.*

17. For such violations, the TCPA provides a private right of action for any "person

3

who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

18.     Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

***Plaintiff Ameena Hussain***

19.     Plaintiff's residential telephone number is 425-754-XXXX (the "telephone number").

20.     To avoid unsolicited telemarketing calls, Plaintiff personally placed her telephone number on the National Do-Not-Call Registry on April 2, 2026.

21.     Since then, Plaintiff has not removed her telephone number from the National Do-Not-Call Registry.

22.     Plaintiff uses her telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

23.     Plaintiff has not used her telephone number for business purposes.

24.     Plaintiff has not associated her telephone number with any business.

25.     Plaintiff has never received a reimbursement from any business for her telephone number.

26.     Plaintiff has never taken a business-related tax-deduction for her telephone number.

*Defendant Engages in Telemarketing*

27.     Defendant is a private residential mortgage lender and mortgage brokerage that helps consumers obtain home purchase loans, refinance existing mortgages, and access other residential financing products through licensed loan officers.

28.     Simply put, Defendant is a mortgage lender.

4

29.     A screenshot of Defendant's website is provided below.

30.     To sell its services, Defendant engages in telemarketing campaigns.

31.     Defendant has already received numerous complaints alleging unwanted telemarketing.

32.     The Better Business Bureau (BBB) has reported a substantial number of complaints against Defendant including repeated unsolicited telemarketing calls, repeated text messages, and continued calls after consumers asked to be removed.

*Defendant violated the TCPA*

33.     As explained below, Defendant violated the TCPA numerous times.

34.     On June 23, 2026, Plaintiff received two text messages from Defendant from telephone number (586) 785-5902.

35.     The text messages were both sent at 6:54 AM, which were outside the hours of 8:00 AM and 9:00 PM as required by federal law.

36.     The text messages were intended for "Joanne," someone other than, and unknown to, Plaintiff.

37.     Plaintiff responded that she was not Joanne.

38.     A screenshot of the text messages is provided below.

5



39. The text messages advertised and promoted the Defendant's mortgage lending products and services.

40. After Plaintiff advised Defendant that it had reached the wrong person, Defendant nevertheless continued contacting Plaintiff by placing additional voice calls to Plaintiff's telephone number in an effort to market its mortgage lending products and services.

41. Defendant called Plaintiff seven times from June 23, 2026 to July 7, 2026.

42. Upon information and belief, the subsequent telephone calls were part of the same telemarketing campaign that generated the June 23, 2026 commercial text messages advertising Defendant's mortgage lending services.

43. Plaintiff alleges the calls were telephone solicitations because they immediately followed Defendant's commercial mortgage marketing text messages, were placed by the same entity promoting its mortgage lending services, and were part of Defendant's ongoing effort to solicit mortgage business from the telephone number it believed belonged to a prospective customer.

44. The only reasonable inference from Defendant's conduct is that the subsequent calls were telephone solicitations because they immediately followed Defendant's commercial mortgage marketing text messages, were placed by the same entity promoting its mortgage lending services, and were part of Defendant's continuing effort to solicit mortgage business from the telephone number it believed belonged to a prospective customer.

45. Defendant's business consists of originating and brokering residential mortgage loans. The commercial text messages sent to Plaintiff promoted those services and were immediately followed by repeated telephone calls directed to the same telephone number. On

7

information and belief, those calls were placed for the same commercial purpose of soliciting mortgage business.

46. The telephone solicitations were unwanted, nonconsensual telemarketing calls because Plaintiff never provided prior express invitation or permission, never requested information from Defendant, and never consented to receive telemarketing from Defendant.

47. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

48. On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23:

> **National Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4) within four years prior to the commencement of this litigation and up until the date of trial.

> **Early/Late Call Class:** All persons within the United States: (1) who received one or more telephone solicitation calls from Defendant; (2) before 8:00 A.M. or after 9:00 P.M. (local time at the called party's location); and (3) within the four years prior to the filing of the Complaint.

> **Washington Class**: All members of the National Do-Not-Call-Registry Class, Internal Do-Not-Call Registry Class, and Early/Late Call Class (expanded to include individuals who received calls or messages after 8:00 P.M. local time) who reside in the State of Washington.

50. Together, the various classes are referred to as the "Class."

51.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

52.     Plaintiff reserves the right to amend the class definition.

53.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

54.     **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

55.     **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

56.     **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarketing practices.

57.     **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

58.     **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting

individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

    a)  whether Defendant violated the TCPA;

    b)  whether Defendant violated the TCPA willfully and knowingly;

    c)  whether Plaintiff is entitled to statutory damages;

    d)  whether Plaintiff is entitled to treble damages;

    e)  whether Defendant should be enjoined from further TCPA violations.

59.    **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**COUNT I**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

60.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

61.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or

other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

62.     Defendant violated the TCPA willfully or knowingly.

63.     Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

64.     Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

**COUNT II**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(1)**
**(On Behalf of Plaintiff and the Early/Late Call Class)**

65.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

66.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Early/Late Call Class for making calls outside the hours of 8:00 A.M. and 9:00 P.M.

67.     Defendant violated the TCPA willfully or knowingly.

68.     Plaintiff and Early/Late Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

69.     Plaintiff and Early/Late Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Early/Late Call

Class Members.

<u>**COUNT III**</u>
**Violations of the Washington ADAD Act, Wash. Rev. Code § 19.158.010–19.158.901, and
the WA CEMA and CPA, RCW 19.190.060 and RCW 19.86
(On Behalf of Plaintiff and the Washington Class)**

70. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

71. The Washington Automatic Dialing and Announcing Device Act, Wash. Rev. Code § 19.158.010–19.158.901 ("ADAD Act"), prohibits the use of automatic dialing and announcing devices for commercial solicitation and provides a private right of action. The ADAD Act is more restrictive than the TCPA in that it prohibits commercial solicitation calls before 8:00 A.M. or after 8:00 P.M. local time at the called party's location—one hour more restrictive than the TCPA's 9:00 P.M. cutoff.

72. It is also a violation of the Washington CEMA to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service..." RCW 19.190.060. A violation of CEMA is a "per se" violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, et seq. RCW 19.190.100; Wright v. Lyft, Inc., 406 P.3d 1149, 1154-55 (Wash. 2017).

73. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the ADAD Act by using an automatic dialing and announcing device to make commercial solicitation calls to Plaintiff and other Washington residents, including calls placed outside the permissible hours of 8:00 A.M. to 8:00 P.M. local time at the called party's location. Defendant violated the ADAD Act willfully or knowingly.

74. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the WA CEMA by initiating or assisting in the transmission of

12

multiple electronic commercial text messages to telephone numbers assigned to Plaintiff and other Washington residents for cellular telephone or pager service.

75. As a result of Defendant's violations of the ADAD Act, Plaintiff and members of the Washington Class are each entitled to a private right of action, injunctive relief, and actual damages or $1,000 per violation, whichever is greater, pursuant to Wash. Rev. Code § 80.36.400. As a result of Defendant's violations of CEMA, Plaintiff and members of the Washington Class are each entitled to an injunction and $100 in damages for each such violation. RCW 19.190.040.

76. Plaintiff and Washington Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Washington Class Members.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

a) Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative/representatives, and appointing her counsel to represent the Class;

b) Awarding statutory damages to Plaintiff and Class Members;

c) Providing the injunctive relief requested herein; and

d) Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Date: July 29, 2026

Respectfully submitted,

By: /s/ *Anthony Paronich*
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
T: (617) 485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff and Proposed Class*

14