**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

AMEENA HUSSAIN, on behalf of herself and others similarly situated,

Plaintiff,

v.

MORTGAGEPROS, LLC,

Defendant.

CLASS ACTION

Case No. 2:26-cv-12618-MAG-APP

District Judge Mark A. Goldsmith
Mag. Judge Anthony P. Patti

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

NOW COMES Plaintiff, AMEENA HUSSAIN, by and through her attorneys, and respectfully requests that this Honorable Court enter an order denying Defendant's above-entitled motion (ECF No. 11) for the reasons set forth in the underlying brief.

Date: October 28, 2026

Respectfully submitted,

By: /s/ Anthony Paronich
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
T: (617) 485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff and Proposed Class*

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether the Court should deny Defendant's Motion to Dismiss because text messages are "telephone call[s]" within the meaning of 47 U.S.C. § 227(c)(5)?

   **Suggested Answer: Yes.**

2. Whether the Court should deny Defendant's Motion to Dismiss because Plaintiff plausibly alleges that she is a "residential telephone subscriber" even though she receives calls and texts on a cellular telephone?

   **Suggested Answer: Yes.**

3. Whether the Court should deny Defendant's Motion to Dismiss because 47 U.S.C. § 227(c)(5) provides a private right of action for violations of 47 C.F.R. § 64.1200(c)?

   **Suggested Answer: Yes.**

4. Whether the Court should exercise supplemental jurisdiction over Plaintiff's Washington claims, which are properly before it alongside her TCPA claims?

   **Suggested Answer: Yes.**

5. Whether Count IV states a Washington Consumer Protection Act claim predicated on a violation of the Washington Commercial Electronic Mail Act?

   **Suggested Answer: Yes.**

6. Whether Count III plausibly alleges that Plaintiff was aggrieved by repeated violations of RCW 80.36.390?

   **Suggested Answer: Yes.**

**CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT**

47 U.S.C. § 227(c)

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 (9th Cir. 2009)

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016)

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370–71 (6th Cir. 2015)

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223–27 (9th Cir. 2022)

*Lirones v. Leaf Home Water Solutions, LLC*, No. 5:23-cv-02087, 2024 WL 4198134, at *5–8 (N.D. Ohio Sept. 16, 2024)

*Dobronski v. CHW Group, Inc.*, No. 24-cv-11649, 2025 WL 2426370, at *5–6 (E.D. Mich. Aug. 21, 2025)

*Arguello v. R.E.S.A., Inc.*, No. 26-cv-05536-JSC, 2026 WL 3169713, at *2–3 (N.D. Cal. Oct. 22, 2026)

*Dovberg v. Haller Enterprises, Inc.*, No. 5:26-cv-4286, ECF No. 20 (E.D. Pa. Oct. 21, 2026)

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003)

*Wright v. Lyft, Inc.*, 189 Wn.2d 718, 406 P.3d 1149 (2017)

*Littman v. Mortgage One Funding LLC*, No. 3:26-cv-05548-BHS, 2026 WL 3150829, at *2–3 (W.D. Wash. Oct. 21, 2026)

# TABLE OF CONTENTS


**I. Introduction** .......... 1

**II. Factual Background** .......... 2

**III. Legal Standard** .......... 3

**IV. Argument** .......... 4

A. Text messages are "telephone call[s]" under § 227(c)(5). .......... 4

1. The ordinary meaning of "call" is an attempt to communicate by telephone, and a text message is one. .......... 4

2. The structure of § 227 confirms that "telephone call" in § 227(c)(5) includes texts. .......... 7

3. The FCC's longstanding view remains persuasive. .......... 9

4. *Steidinger* is unpersuasive, and the claims survive even if it were adopted. .......... 10

B. Plaintiff plausibly alleges that she is a "residential telephone subscriber." .......... 11

1. Section 227(c) protects a type of subscriber, not a type of technology. .......... 12

2. The FCC's conclusion is persuasive, and the Court would reach the same result without it. .......... 13

3. Courts in this Circuit have so held at the pleading stage. .......... 15

C. Section 227(c)(5) provides a private right of action for violations of 47 C.F.R. § 64.1200(c). .......... 16

D. Plaintiff's Washington claims state a claim for relief. .......... 19

1. The Court should exercise supplemental jurisdiction. .......... 19

2. Count IV states a Consumer Protection Act claim predicated on CEMA. .......... 20

3. Count III plausibly alleges repeated violations of RCW 80.36.390. .......... 23

**V. Conclusion** .......... 25

# TABLE OF AUTHORITIES

## Cases

*Arguello v. R.E.S.A., Inc.*, No. 26-cv-05536-JSC, 2026 WL 3169713 (N.D. Cal. Oct. 22, 2026)....7, 10, 11, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....3

*AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366 (1999)....18

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003)....17, 18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....4

*Brown v. Gardner*, 513 U.S. 115 (1994)....7

*Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 2024 WL 3293628 (S.D.N.Y. July 3, 2024)....12

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)....2, 5

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022)....14, 15, 16, 19

*Cole v. C/T Install America, LLC*, No. 25-3531, 2026 WL 916582 (E.D. Pa. Mar. 23, 2026)....5

*Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017)....15

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)....3

*Dobronski v. Baid*, 2024 WL 3997059 (E.D. Mich. Aug. 29, 2024)....25

*Dobronski v. CHW Group, Inc.*, No. 24-cv-11649, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025)....3, 4, 15, 18

*Dovberg v. Haller Enterprises, Inc.*, No. 5:26-cv-4286, ECF No. 20 (E.D. Pa. Oct. 21, 2026)....passim

*Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021)....6

*Florida East Coast Railway LLC v. Federal Railroad Administration*, 186 F.4th 822 (11th Cir. 2026)....17

*Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3d Cir. 2013)....11

*Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999 (W.D. Wash. 2019)...............21

*Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026) ....6, 11

*Internicola v. MortgagePros, LLC*, 2026 WL 3027393 (M.D. Fla. Sept. 24, 2026)...........................................................................................................19

*Jackson v. Direct Building Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024)...................................................................14

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015).....................6

*Lirones v. Leaf Home Water Solutions, LLC*, No. 5:23-cv-02087, 2024 WL 4198134 (N.D. Ohio Sept. 16, 2024)....................................................passim

*Littman v. Mortgage One Funding LLC*, No. 3:26-cv-05548-BHS, 2026 WL 3150829 (W.D. Wash. Oct. 21, 2026)........................................19, 21, 24, 25

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ............................9, 14

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)..................................................................................................................9

*Meade v. Profusion Cosmetics Corp.*, 2026 WL 2098093 (W.D. Wash. July 16, 2026)...........................................................................................................21

*Montes v. SPARC Group LLC*, 6 Wn.3d 321 (2026)........................................21, 22

*Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244 (6th Cir. 1996)...........................................................................................................19

*Newell v. Children's Dental Health Associates, LLC*, No. 25-5238, 2026 WL 927378 (E.D. Pa. Apr. 6, 2026).....................................................................8

*Ottensmeyer v. Chesapeake & Potomac Telephone Co.*, 756 F.2d 986 (4th Cir. 1985).......................................................................................................14

*Perrin v. United States*, 444 U.S. 37 (1979)............................................................4

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).......2, 4, 5, 6, 11

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018) ................7

*Sprogis v. Suntrust Bank*, No. 6:13–CV–365–Orl–37, 2013 WL 2456090 (M.D. Fla. June 6, 2013).........................................................................24

*State v. Delgado*, 148 Wn.2d 723 (2003) ..............................................................25

*Steidinger v. Blackstone Medical Services*, 182 F.4th 532 (7th Cir. 2026)......passim

*Stockdale v. Skymount Property Group, LLC*, 825 F. Supp. 3d 622 (N.D. Ohio 2026) ....................................................................................4

*Wisconsin Central Ltd. v. United States*, 585 U.S. 274 (2018) ..................................5

*Wright v. Lyft, Inc.*, 189 Wn.2d 718, 406 P.3d 1149 (2017) ............................passim

**Statutes**

15 U.S.C. § 6151 *et seq.* (Do-Not-Call Implementation Act) .....................16, 17, 18

28 U.S.C. § 1332(d)(2)...........................................................................................20

28 U.S.C. § 1367(c)(3) ......................................................................................19, 20

47 U.S.C. § 201(b) ..................................................................................................18

47 U.S.C. § 227 ...................................................................................................passim

RCW 19.190.030.......................................................................................................22

RCW 19.190.040.......................................................................................................20

RCW 19.190.060.......................................................................................................21

RCW 80.36.390.....................................................................................................23, 25

**Regulations**

47 C.F.R. § 64.1200 ...........................................................................................passim

47 C.F.R. § 64.2305 ..................................................................................................13

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................3

**Other Authorities**

14 FCC Rcd. 15550 (1999).........................................................................................13

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003).....................9, 10, 13, 17

*Targeting & Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247 (2023)........................................................................................................9, 10

89 Fed. Reg. 5098 (Jan. 26, 2024) ........................................................ 10

Laws of 2003, ch. 137, § 1 (Wash.) ........................................................ 22

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| AMEENA HUSSAIN, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MORTGAGEPROS, LLC,<br><br>Defendant. | CLASS ACTION<br><br>Case No. 2:26-cv-12618-MAG-APP<br><br>District Judge Mark A. Goldsmith<br>Mag. Judge Anthony P. Patti |

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Defendant MortgagePros, LLC ("MPros") sent Plaintiff Ameena Hussain, whose telephone number had been on the National Do-Not-Call Registry since April 2, 2026, three commercial text messages at 6:50 a.m. and 6:54 a.m. on June 23, 2026, and called her seven times between June 23 and July 7, 2026, including after she told MPros that it had the wrong person. First Amended Class Action Complaint ("FAC"), ECF No. 9, ¶¶ 23, 37–42, 44–45. MPros now asks the Court to hold that none of this is actionable. It argues that a text message is not a "telephone call" under 47 U.S.C. § 227(c)(5); that the Federal Communications Commission ("FCC") had no power to write the do-not-call rules that § 227(c)(5) enforces; that a cellular telephone can never belong to a "residential telephone

subscriber"; and that Washington law gives Plaintiff no remedy for unsolicited commercial text messages or repeated telephone solicitations.

Each argument asks the Court to prefer a reading that is less well supported than the one it rejects. The Ninth Circuit has held that "a voice message or a text message are not distinguishable in terms of being an invasion of privacy," *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009), and the Supreme Court has described a text message to a cellular telephone as one that, "it is undisputed, qualifies as a 'call.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Courts in this Circuit have held that cell phone users can be "residential telephone subscribers." And the Washington Supreme Court has held that a text message violation of Washington's Commercial Electronic Mail Act establishes injury and causation under the state Consumer Protection Act. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 732 (2017). The Motion should be denied.

## II. FACTUAL BACKGROUND

Plaintiff is a citizen of Washington and is domiciled there. FAC ¶ 5. Her telephone number is assigned to a cellular telephone service, she uses it "for personal, residential, and household purposes," and she has never used it for business. *Id.* ¶¶ 21–22, 25–29. She placed the number on the National Do-Not-Call Registry on April 2, 2026, and has not removed it. *Id.* ¶¶ 23–24. MPros is a Michigan mortgage lender and brokerage that helps consumers obtain home-

purchase loans and refinance existing mortgages, and, "[t]o sell its services, [it] engages in telemarketing campaigns." *Id.* ¶¶ 6, 30–33.

On June 23, 2026, Plaintiff received three text messages from MPros, the first at 6:50 a.m. and the second and third at 6:54 a.m., "local time at Plaintiff's location." *Id.* ¶¶ 37–38. The messages were addressed to "Joanne," a stranger to Plaintiff, and began, "Hi Joanne, this is Lucas Rohr with MortgagePros." *Id.* ¶¶ 39, 41 (screenshot). They advertised and promoted MPros's mortgage lending products and services. *Id.* ¶ 42. Plaintiff told MPros by text message on June 25 that she was not Joanne. *Id.* ¶ 40. MPros "nevertheless continued contacting Plaintiff by placing additional voice calls to [her] telephone number in an effort to market its mortgage lending products and services," seven in all between June 23 and July 7, 2026. *Id.* ¶¶ 44–45. Plaintiff never consented to any of it. *Id.* ¶ 54.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in her favor. *Dobronski v. CHW Group, Inc.*, No. 24-cv-11649, 2025 WL 2426370, at *1 (E.D. Mich. Aug. 21, 2025) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th

Cir. 2007)). A plaintiff need not plead "detailed factual allegations." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## IV. ARGUMENT

### *A. Text messages are "telephone call[s]" under § 227(c)(5).*

Defendant's lead argument is that a text message cannot be a "telephone call" under § 227(c)(5). ECF No. 11, PageID.85–91. It rests on one decision from outside this Circuit, *Steidinger v. Blackstone Medical Services*, 182 F.4th 532 (7th Cir. 2026), and on a district court decision in this Circuit that follows it.[1] Those decisions are outliers, and their reasoning does not hold up.

#### *1. The ordinary meaning of "call" is an attempt to communicate by telephone, and a text message is one.*

The TCPA does not define "call," so the word takes its "ordinary, contemporary, common meaning." *Satterfield*, 569 F.3d at 953 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). *Satterfield* defined it as "to communicate with or try to get into communication with a person by a telephone." *Id.* at 953–54. Defendant's own source, a 1991 dictionary, defines a call as "to get or try to get into communication by telephone." *Steidinger*, 182 F.4th at 535–36. Neither

---

[1]Defendant also cites *Stockdale v. Skymount Property Group, LLC*, 825 F. Supp. 3d 622, 625–26 (N.D. Ohio 2026), which, as Defendant describes it, held that "telephone call" excludes text messages because texts do not reproduce sounds at a distance. ECF No. 11, PageID.86–87. *Stockdale* does not bind this Court, and the reasons *Steidinger* is unpersuasive apply equally to it.

definition mentions sound. Both define a call by what it does: it tries to reach someone by telephone.

*Steidinger* introduced sound through the dictionary's definition of "telephone" and concluded that "in 1991, a 'telephone call' referred to communication via sound." *Id.* at 536. But a text message is sent to a telephone, using a telephone number, to "get into communication" with its recipient. That is why the Ninth Circuit found it "undisputed that text messaging is a form of communication used primarily between telephones." *Satterfield*, 569 F.3d at 954. *Steidinger* itself acknowledged that "new applications may arise in light of changes in the world," 182 F.4th at 535 (quoting *Wisconsin Central Ltd. v. United States*, 585 U.S. 274, 284 (2018)), and that § 227(c)(5) "covers more than telephone calls as they existed in 1991." *Id.* at 536. Texting is a modern way of doing what the 1991 definition describes. As the Eastern District of Pennsylvania put it, "[a] text message[, like a telephone call] is sent via telephone in an attempt to communicate with another person." *Dovberg v. Haller Enterprises, Inc.*, No. 5:26-cv-4286, ECF No. 20, slip op. at 8 (E.D. Pa. Oct. 21, 2026) (quoting *Cole v. C/T Install America, LLC*, No. 25-3531, 2026 WL 916582, at *1 n.1 (E.D. Pa. Mar. 23, 2026)).

The Supreme Court has used the word the same way. *Campbell-Ewald* stated that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." 577 U.S. at 156. *Steidinger* reads

that sentence as an assumption rather than a holding, citing *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021). 182 F.4th at 537. At most, then, the question is open at the Supreme Court. And the courts of appeals that have reached it, in the § 227(b) context, have answered yes. *See id.* at 538 (collecting decisions of the First, Second, Ninth, and Eleventh Circuits, including *Howard v. Republican National Committee*, 164 F.4th 1119, 1124 (9th Cir. 2026), which held that "a text message is properly deemed to be a 'call' within the meaning of the TCPA").

The Sixth Circuit has treated texts as calls too. In *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015), the court "unhesitatingly afford[ed] deference to the agency holding that a text message should be treated as a 'call' for purposes of the TCPA." *Id.* at 371. Plaintiff acknowledges that *Keating* reached that result through *Chevron* deference, *id.* at 370–71, which no longer applies. But *Keating*'s observation that automated text messages "would engender the same unwanted intrusions as automated telephone calls," *id.* at 371, is a point about the statute's purpose, and it is the same point *Satterfield* made on independent textual grounds: voice and text messages "are not distinguishable in terms of being an invasion of privacy." 569 F.3d at 954. District courts in this Circuit have likewise read "call" to include "communication, or an attempt to communicate, via telephone," and have recognized that "the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, *e.g.*, with the advent of

text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018).

2. *The structure of § 227 confirms that "telephone call" in § 227(c)(5) includes texts.*

Section 227(b) uses "call" to include text messages, and a word is presumed to carry the same meaning throughout a statute. *See Steidinger*, 182 F.4th at 539 (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). Applying that presumption, the Northern District of California recently rejected *Steidinger* and held that "to 'receive' a 'telephone call' within the meaning of § 227(c)(5) applies to text messages the same as 'to make any call' and 'to initiate any telephone call' within the meaning of § 227(b)." *Arguello v. R.E.S.A., Inc.*, No. 26-cv-05536-JSC, 2026 WL 3169713, at *2 (N.D. Cal. Oct. 22, 2026). A defendant's insistence that subsection (b) is "broader in [the communications] it prohibits" than subsection (c) "does not rebut the presumption." *Id.*

*Steidinger* and Defendant also invoke the meaningful-variation canon: § 227(a)(4) defines a "telephone solicitation" as "the initiation of a telephone call or message," while § 227(c)(5) refers only to a "telephone call." ECF No. 11, PageID.87; 182 F.4th at 536. But the statute itself does not treat "call" and "message" as mutually exclusive. Section 227(b)(1)(B) prohibits "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message." *Lirones v. Leaf Home Water Solutions, LLC*, No.

5:23-cv-02087, 2024 WL 4198134, at *3 (N.D. Ohio Sept. 16, 2024) (quoting 47 U.S.C. § 227(b)(1)(B)). A "message" delivered by telephone is a "telephone call." The phrase "call or message" in § 227(a)(4) therefore cannot mean that every message falls outside "telephone call." Section 227(c)(5), moreover, does not catalogue covered communications; it gives a cause of action to a person who received "more than one telephone call . . . in violation of the regulations prescribed under this subsection," 47 U.S.C. § 227(c)(5), and those regulations prohibit "telephone solicitation[s]," 47 C.F.R. § 64.1200(c); *Lirones*, 2024 WL 4198134, at *4. As *Dovberg* concluded, the use of the word "message" in the statutory definition of a solicitation "bolsters the Court's conclusion that Section 227(c)(5) covers text messages." Slip op. at 9.

Defendant's reliance on the later amendments to the TCPA fare no better. ECF No. 11, PageID.87–88. Section 227(e) addresses "caller identification information," which shows that a "call" can be "a voice conversation or a text conversation." *Dovberg*, slip op. at 11–12 (quoting *Newell v. Children's Dental Health Associates, LLC*, No. 25-5238, 2026 WL 927378, at *6 (E.D. Pa. Apr. 6, 2026)). That court found it "considerably more likely that the 2018 amendment reflects an understanding that the 'telephone call' language in subsections (b) and (c) includes texts and remains inclusive of other ways that telephone users reach out and communicate with each other." *Id.* And *Steidinger* itself cautions that

"[c]ongressional inaction lacks persuasive significance in most circumstances," 182 F.4th at 539, even as it inferred from Congress's silence in § 227(c)(5). *Id.*

*3. The FCC's longstanding view remains persuasive.*

Plaintiff does not ask the Court to defer to the FCC. After *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Court "interpret[s] the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Steidinger*, 182 F.4th at 538 (quoting *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025)). Here the text and the agency point the same way, and the agency's view is long settled. In 2003 the FCC explained that the TCPA's prohibitions "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) ("2003 Order"). And after notice and comment, the FCC extended the Registry's protections to text messages, explaining that "[t]exters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry," and recording the observation that "it would be anomalous to conclude that text messages to wireless numbers are 'calls' for one part of the Commission's TCPA rules but not for the DNC protections." *Targeting & Eliminating Unlawful*

*Text Messages*, 38 FCC Rcd. 12247, 12256–57 ¶¶ 26–27 (2023); *see also* 89 Fed. Reg. 5098, 5099 (Jan. 26, 2024) (codified at 47 C.F.R. § 64.1200(e)).

The implementing regulation now says what the FCC intended. Section 64.1200(e) provides that the rules in paragraph (c) "are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." *Arguello*, 2026 WL 3169713, at *3 (quoting 47 C.F.R. § 64.1200(e)); *accord Dovberg*, slip op. at 10 (finding these regulations "persuasive"). Defendant answers that § 64.1200(e) applies only "to the extent described" in the 2003 Order, which it says concerned § 227(b). ECF No. 11, PageID.90. But the 2003 Order described both text "calls" and wireless subscribers' do-not-call protections, 18 FCC Rcd. at 14038–39, 14115, and the 2023 Order codified the text message protections in paragraph (e) itself. Defendant's remaining objections to § 64.1200(e)—that it is untimely under § 227(c)(2) and that the FCC cannot rewrite the statute, ECF No. 11, PageID.90–91—fail for the reasons in Part IV.C, and Plaintiff's reading in any event follows the statute's text rather than departing from it.

4. *Steidinger is unpersuasive, and the claims survive even if it were adopted.*

*Steidinger*'s closing rationale was that spam texts "don't pose" the public safety risk of tying up emergency telephone lines. 182 F.4th at 540. But § 227(c) exists "to protect residential telephone subscribers' privacy rights to avoid

receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), and a text invades that privacy as a voice call does. *Satterfield*, 569 F.3d at 954. And the Ninth Circuit's decisions in *Satterfield* and *Howard* were not confined to § 227(b): they "articulated a general definition of 'call' as used in the TCPA." *Arguello*, 2026 WL 3169713, at *2. Because "the TCPA is a remedial statute, it should be construed to benefit consumers," *Dovberg*, slip op. at 6 (quoting *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 271 (3d Cir. 2013)), the Court should not adopt one circuit's narrower reading.

In any event, *Steidinger* does not dispose of this case. The *Steidinger* plaintiffs "didn't contend below or on appeal that their suit could proceed based on the alleged calls alone," so the Court did not consider that question. 182 F.4th at 535 n.*. Plaintiff here alleges seven voice calls between June 23 and July 7, 2026, well within a single twelve-month period, to a number that had been on the Registry for more than 31 days. FAC ¶¶ 23, 45, 50. Defendant's Issue 1 argument is directed only to text messages, ECF No. 11, PageID.85–91, so, whatever its merit, it does not reach the calls.

*B. Plaintiff plausibly alleges that she is a "residential telephone subscriber."*

Defendant next argues that a cellular telephone can never be "residential," so that Plaintiff lacks "statutory standing" under § 227(c). ECF No. 11, PageID.99–101. The text, the FCC, and a number of other Courts all say otherwise.

1. *Section 227(c) protects a type of subscriber, not a type of technology.*

The statute directs the FCC to protect “residential telephone subscribers’ privacy rights.” 47 U.S.C. § 227(c)(1). Defendant contrasts § 227(b), which separately addresses “cellular telephone service” and “residential telephone line[s].” ECF No. 11, PageID.100–01. But as the Northern District of Ohio explained, that contrast supports Plaintiff. Section 227(b) regulates “enumerated categories of phone technologies,” while § 227(c) “provides protections to a certain type of phone user, regardless of the technology.” *Lirones*, 2024 WL 4198134, at *6. Defendant’s *expressio unius* argument “amounts to a category mistake”: “a ‘residential subscriber’ and a cellular telephone are not members of the same genus.” *Id.* (quoting *Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 2024 WL 3293628, at *6–7 (S.D.N.Y. July 3, 2024)). Congress used the word “line” in § 227(b)(1)(B) but “subscriber” in § 227(c), and if “residential” referred to technology, “Congress’s reference to a residential telephone ‘line’ [in § 227(b)] would be surplusage, as a residential telephone would necessarily be a landline instead of a cellphone.” *Id.* (internal citation omitted). A residential subscriber is therefore “one who maintains a phone for residential purposes . . . i.e., for personal activities associated with his or her private, domestic life.” *Id.* (internal quotation marks and citation omitted). *Accord Dovberg*, slip op. at 13–14

(a contrary reading would require Congress to have said somewhere in § 227(c) that the registry "is limited to a 'residential telephone line'").

2. *The FCC's conclusion is persuasive, and the Court would reach the same result without it.*

And, unlike the term "telephone call," the term "residential subscriber" is explicitly defined by the FCC regulations. A "residential subscriber" is simply "a subscriber … that is not a business subscriber" for tariff and billing purposes. 47 C.F.R. § 64.2305(d); *see* 14 FCC Rcd. 15550, 15692 (1999). And Congress did not protect residential telephone "lines" in Section 227(c), as it did in Section 227(b)(1)(B); it protected residential telephone "subscribers," a word that describes the customer who purchases service, not the hardware technology that carries it nor its physical location. The 2003 Order rejected the argument Defendant makes here. The FCC found a narrow definition of "residential subscribers" to be "far too restrictive and inconsistent with the intent of section 227," because "there is nothing in section 227 to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect," and because "it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." 18 FCC Rcd. at 14038 ¶ 35. It therefore "presume[d] wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *Id.* at 14039 ¶ 36.

Defendant says the FCC "exceeded the scope of its authority and rewrote the statute's language." ECF No. 11, PageID.99. Not so. Even setting the regulatory definition aside, statutory analysis forecloses this argument. The word "residential" simply refers to the *purposes* for which a phone is *used*, not its physical characteristics or location. *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5-*7 (M.D. Pa. Jan. 17, 2024). This distinction extends well prior to the TCPA. In *Ottensmeyer v. Chesapeake & Potomac Tel. Co.*, the Fourth Circuit addressed a over whether service was provided as a "business" or "residence" depended on whether the "use is primarily or substantially of a business, … nature" and that service may be classified as "residen[tial]" "where the primary use of the service is of a domestic nature." 756 F.2d 986, 989 n.4 (4th Cir. 1985). Courts thus have long understood "residence service" to be a recognized *use* of telephone service, as opposed to a description of where the telephone was located.

Even after *Loper Bright*, though, an agency's interpretation "may be especially informative to the extent it rests on factual premises within the agency's expertise," and the FCC's finding about how consumers actually use wireless phones is such a premise. *Lirones*, 2024 WL 4198134, at *7 (quoting *Loper Bright*). The court of appeals to have addressed the issue agrees: the Ninth Circuit held that registered cell phones used for both personal and business purposes "are presumptively 'residential' within the meaning of § 227(c)." *Chennette v.*

*Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). *Lirones* observed that the Ninth Circuit's holding "was premised on the conclusion that § 227(c) could encompass cellular telephones in some circumstances." 2024 WL 4198134, at *8.

3. *Courts in this Circuit have so held at the pleading stage.*

In *Dobronski v. CHW Group*, Judge Parker rejected the argument that a plaintiff must plead that a cell phone is "actually used" for residential purposes. Because the plaintiff alleged that his cell phone was "primarily used for 'personal, family, and household communications,'" and that the numbers were registered on the Registry, he was "entitled to the FCC's presumption of residential telephone subscriber." 2025 WL 2426370, at *5–6. *Lirones* likewise denied a motion to dismiss on this ground "for personal and household use only." 2024 WL 4198134, at *1, *5–7, and distinguished other decisions involving "the same serial plaintiff" that dismissed § 227(c) claims because the plaintiff "did not plead that the cellular telephone number called was used for residential purposes." *Id.* at *5, *8 (discussing *Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017)). Defendant's district court citations, ECF No. 11, PageID.100, are from outside this Circuit and do not bind the Court.

Plaintiff has alleged what these courts require. Her number is her "residential telephone number," although it is assigned to a cellular telephone service. FAC ¶¶ 21–22. She "uses her telephone number for personal, residential,

and household purposes (such as calling friends, family, and scheduling personal appointments)," and she has never used it for business use. *Id.* ¶¶ 25–29. And she placed it on the Registry on April 2, 2026, and never removed it, so that each text and call came more than 31 days after she registered. *Id.* ¶¶ 23–24, 50. She is thus entitled to the presumption at this stage. *See Chennette*, 50 F.4th at 1225–26. The quiet hours claim does not depend on Registry listing at all; § 64.1200(c)(1) protects "residential telephone subscribers" from solicitations before 8:00 a.m. and after 9:00 p.m., and § 64.1200(e) expressly applies that rule to wireless numbers. *See Arguello*, 2026 WL 3169713, at *3 (rejecting the argument that the quiet hours rule does not apply to text messages, and noting that cell phones are residential (quoting *Chennette*, 50 F.4th at 1225)). The FAC alleges that the first text arrived at 6:50 a.m. and the second and third at 6:54 a.m., local time. FAC ¶ 38.

*C. Section 227(c)(5) provides a private right of action for violations of 47 C.F.R. § 64.1200(c).*

Counts I and II of the FAC assert claims under § 227(c)(5) for violations of 47 C.F.R. § 64.1200(c)(2) (the Registry) and § 64.1200(c)(1) (calling hours), respectively. FAC ¶¶ 69–78. Defendant contends that the FCC's do-not-call rules were prescribed under the Do-Not-Call Implementation Act, 15 U.S.C. § 6151 *et seq.*, rather than § 227(c), and that the FCC's § 227(c) authority "expired" in 1992, so that violations of § 64.1200(c) cannot support a claim. ECF No. 11, PageID.91–98. The argument fails on the statute's text and on the FCC's own record.

Section 227(c)(5) gives a cause of action to a person who received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations *prescribed under this subsection*." 47 U.S.C. § 227(c)(5). The question is thus whether § 64.1200(c) is a regulation "prescribed under" § 227(c). It is. The FCC announced in the 2003 Order that, "[p]ursuant to our authority under section 227(c), we adopt a national do-not-call registry." 18 FCC Rcd. at 14034 ¶ 28. It explained that § 227(c)(3) provides that the FCC "may require the establishment and operation of a single national database," *id.* at 14028 ¶ 16, and it adopted the rules "pursuant to the authority contained in Sections 1-4, 222, 227, and 303(r)" of the Communications Act, among other provisions. *Id.* at 14142–43 ¶ 222. Nothing in the Do-Not-Call Implementation Act displaced § 227(c): as the FCC noted, the Act "requires the FCC to issue a final rule in its ongoing TCPA proceeding" and to coordinate with the Federal Trade Commission. *Id.* at 14027 ¶ 15. A Congress that believed the TCPA proceeding had lapsed in 1992 would not have told the FCC to conclude it.

Defendant's deadline argument fails for a related reason. As an initial matter, when Congress imposes a deadline for regulatory rulemaking, that deadline is simply a "time-related directive" that functions "as a spur to prompt action, not as a bar to tardy completion of ... business." *Fla. E. Coast Ry. LLC v. Fed. R.R. Admin.*, 186 F.4th 822, 849-50 (11th Cir. 2026) (quoting *Barnhart v. Peabody*

*Coal Co.*, 537 U.S. 149, 152 (2003)). A deadline to act is not a bar to the power to act, and not "a jurisdictional limit precluding action later." *Barnhart*, 537 U.S. 149 at 158. Sections 227(c)(1) and (c)(2) tell the FCC when to "initiate" and "conclude" its first rulemaking. Neither says that the FCC's authority lapses when the deadline passes or that regulations prescribed afterward are void, and § 227(c)(5) enforces "the regulations prescribed under this subsection," without a temporal limit. And, when Congress meant the initial rules, it said so, such as referencing "[t]he regulations required by paragraph (2)." 47 U.S.C. § 227(c)(3).

Even so, the FCC's power to implement § 227(c) never depended on the "deadline." The Communications Act and Do Not Call Implementation Act both independently authorize FCC action. 47 U.S.C. § 201(b); 15 U.S.C. § 6151. That grant "means what it says" and reaches provisions later added to the Act. *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 377-78 (1999). Like there, Defendant's argument is a mere academic exercise since other statutes also independently supply the FCC's power to craft regulations under the TCPA. And the calling hours claims remain regardless, because those claims *were* promulgated in 1992.

Courts have accordingly adjudicated claims under § 227(c)(5) for violations of § 64.1200(c). *See Lirones*, 2024 WL 4198134, at *1 (claims "arise under § 227(c) of the TCPA and the regulations at 47 C.F.R. § 64.1200(c) and (d)"); *Dobronski v. CHW Group*, 2025 WL 2426370, at *5–7; *Dovberg*, slip op. at 17–18

(holding that § 227(c)(5) "provides a private right of action for violations of Section 64.1200(c)(2)"); *Littman v. Mortgage One Funding LLC*, No. 3:26-cv-05548-BHS, 2026 WL 3150829, at *3 (W.D. Wash. Oct. 21, 2026) (quoting *Chennette*, 50 F.4th at 1219–20, for the proposition that the TCPA prohibits "telephone solicitations sent to residential telephone subscribers who have registered their phone numbers on the national do-not-call registry" (citing 47 U.S.C. § 227(c))). Defendant cites a single contrary decision, *Internicola v. MortgagePros, LLC*, 2026 WL 3027393 (M.D. Fla. Sept. 24, 2026), which is on appeal, does not bind this Court, and is at odds with these decisions.

*D. Plaintiff's Washington claims state a claim for relief.*

*1. The Court should exercise supplemental jurisdiction.*

Defendant asks the Court to decline supplemental jurisdiction "[u]pon the appropriate dismissal of the TCPA claims." ECF No. 11, PageID.101 (citing 28 U.S.C. § 1367(c)(3)). The request is moot because the TCPA claims should proceed. Defendant's own authority reasons that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (quoted in ECF No. 11, PageID.101–02). That premise is absent here. And the Court's jurisdiction over the Washington claims does not depend on § 1367 in any event. The FAC also pleads

original jurisdiction over the putative class under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2): Plaintiff is a citizen of Washington, MPros is a citizen of Michigan, the proposed classes exceed 100 members, and the amount in controversy exceeds $5,000,000. FAC ¶ 8. Defendant's Motion does not address that basis, and § 1367(c)(3) limits only the exercise of supplemental jurisdiction.

*2. Count IV states a Consumer Protection Act claim predicated on CEMA.*

Defendant first argues that "CEMA affords no damages remedy absent allegations of phishing." ECF No. 11, PageID.101–02. That attacks a claim Plaintiff did not bring. Count IV is a claim under the Washington Consumer Protection Act ("CPA"), and *Wright* answered the very question Defendant raises. The court held that CEMA itself creates a damages action only for phishing, but it added that "a recipient of unsolicited commercial text messages is not bereft of legal remedy—he or she may pursue redress under the CPA." 189 Wn.2d at 728. It then held that CEMA's text-message provision satisfies the CPA's injury and causation elements: "We conclude that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law." *Id.* at 732. The parties in *Wright* did "not dispute that transmission of a text message in violation of CEMA establishes the first three elements of a CPA claim," *id.* at 728, and Defendant concedes that "a CEMA violation is a per se CPA violation." ECF No. 11, PageID.102. Defendant does not argue that the FAC fails to allege a CEMA

violation, and its observation that the messages "were not phishing" is beside the point. The FAC alleges that Plaintiff is a Washington citizen, FAC ¶ 5; that her cellular telephone number bears a Washington area code, ¶ 22; that the three text messages "advertised and promoted the Defendant's mortgage lending products and services," ¶ 42; that MPros conducts business in Washington, ¶¶ 52, 93; and that Plaintiff never consented to the messages and MPros does not provide her cellular service, ¶¶ 54, 94. Those allegations state a violation of RCW 19.190.060(1). FAC ¶¶ 91, 93.

Defendant's second argument is that Plaintiff has not pleaded "injury to business or property." ECF No. 11, PageID.102–04. It relies on *Meade v. Profusion Cosmetics Corp.*, 2026 WL 2098093, at *5 (W.D. Wash. July 16, 2026), for the proposition that "[a] successful CEMA claim establishes only the first three elements" of a CPA claim, and on *Montes v. SPARC Group LLC*, 6 Wn.3d 321 (2026), for the proposition that CPA injury must be economic. But the Washington Supreme Court has held the opposite of *Meade*'s premise, and a federal court applying *Montes* has said so. In *Littman*, the court recited *Montes*'s economic-injury requirement and still held that "a CEMA violation is a per se violation of the CPA, satisfying the injury and causation elements as a matter of law," citing *Wright*, 189 Wn.2d at 732, and denied dismissal. 2026 WL 3150829, at *3. *See also Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1003 (W.D. Wash. 2019)

(explaining that "a plaintiff alleging a CEMA violation under RCW 19.190.030(1) need not allege injury or causation beyond the CEMA violation"). Defendant cites *Montes* for the general rule that injury must be economic, ECF No. 11, PageID.103; it does not contend that *Montes* addressed CEMA or overruled *Wright*.

Even if injury had to be pleaded, the FAC alleges the injury that *Wright* recognized. Plaintiff alleges that the messages "occupied and interfered with the use of [her] cellular telephone[], consumed the telephones' memory and battery, and temporarily deprived [her] of the undisturbed use of [her] telephones and telephone service." FAC ¶ 95 (quoted in ECF No. 11, PageID.103); *see also id.* ¶ 56 (the messages and calls "occupied Plaintiff's cellular telephone and telephone line and temporarily deprived Plaintiff of the undisturbed use of her telephone and telephone service"); *id.* ¶ 96 (alleging proximate cause). That ¶ 55 also describes a privacy harm and annoyance, ECF No. 11, PageID.103, does not detract from the property injury pleaded in ¶¶ 56 and 95. In enacting the text-message provision, the Washington Legislature found that "[t]he limited memory of these devices can be exhausted by unwanted text messages resulting in the inability to receive necessary and expected messages." *Wright*, 189 Wn.2d at 730 (quoting Laws of 2003, ch. 137, § 1). The *Wright* court read that finding to show the Legislature's "intent to limit the practice of sending any unsolicited commercial text messages because

they cause injury to consumers by using limited data and memory of mobile devices and interrupting receipt of necessary and expected messages." *Id.* at 731. And it rejected the distinction Defendant now draws between plans: when the defendant argued that a text might injure a user on a prepaid plan but not on an unlimited plan, the court answered that "the legislature did not delineate between these specific types of injuries." *Id.* Defendant's demand that Plaintiff plead that she paid for the messages or exceeded an allowance, ECF No. 11, PageID.104, asks for what *Wright* declined to require.

*3. Count III plausibly alleges repeated violations of RCW 80.36.390.*

Defendant argues that Plaintiff has not been "aggrieved by repeated violations" of RCW 80.36.390, because the FAC pleads "nothing" about the seven calls and the texts are "a single episode lasting four minutes." ECF No. 11, PageID.104–07. Neither point has merit.

*The calls.* The FAC alleges that MPros called Plaintiff seven times between June 23 and July 7, 2026, FAC ¶ 45; that MPros placed them in an effort "to market its mortgage lending products and services," ¶ 44; that they "immediately followed" the texts and were "placed by the same entity promoting its mortgage lending services," ¶ 47; and that MPros "continued contacting Plaintiff by placing additional voice calls" after she told it that it had reached the wrong person, ¶¶ 40, 44. Defendant concedes that, as to the texts, Plaintiff "pled the sending number,

sender name, and time of each message," ECF No. 11, PageID.105, and the texts name MortgagePros as the sender, FAC ¶ 41. Paragraph 44, unlike ¶ 46, is not pleaded on information and belief; it alleges directly that MPros itself kept calling. Defendant also suggests that the FAC is inconsistent about timing. ECF No. 11, PageID.105. It is not. The seven calls span June 23 to July 7, ¶ 45, and Plaintiff told MPros on June 25 that it had the wrong person, ¶ 40. A two-week period naturally includes calls both before and after that date, and ¶ 44 alleges that calls continued after the notice, not that every call followed it. Calls to the same telephone, beginning the same day as the texts and continuing for two weeks, support a reasonable inference that they came from the same sender and had the same solicitation purpose. *Littman* accepted a comparable showing: the plaintiff there need not "identify every call or message," and his allegations "that Mortgage One contacted him without his consent, despite his phone number being listed on the Do Not Call Registry, support a reasonable inference that it contacted him to solicit financial services." 2026 WL 3150829, at *3. Details such as the calling number, date, and frequency are "more likely to be in Defendant's records and accessible through discovery." *Id.* at *2 (quoting *Sprogis v. Suntrust Bank*, No. 6:13–CV–365–Orl–37, 2013 WL 2456090, at *2 (M.D. Fla. June 6, 2013)). Defendant's own authority asks only whether the plaintiff alleges "sufficient factual content to plausibly claim" that the defendant is responsible for the calls.

ECF No. 11, PageID.105–06 (quoting *Dobronski v. Baid*, 2024 WL 3997059, at *5–6 (E.D. Mich. Aug. 29, 2024)). The FAC does so.

*The texts.* The statute reaches a person "aggrieved by repeated violations of this section." RCW 80.36.390(13) (quoted in ECF No. 11, PageID.104–05). Defendant admits that at least two of the texts could be telephone solicitations. ECF No. 11, PageID.106–07. A second solicitation sent four minutes after the first is a repeated violation. Defendant would read "repeated" to require "recurrence over time," *id.* at PageID.107, but the Legislature did not say so, and courts "cannot add words or clauses to a statute when the legislature has chosen not to include that language." *Wright*, 189 Wn.2d at 729 (citing *State v. Delgado*, 148 Wn.2d 723, 727 (2003)). Nor are the texts the only violations: the FAC alleges that each text also violated the calling hours and do not call restrictions and it alleges seven further calls. ECF No. 11, PageID.105; FAC ¶¶ 84–86. *Cf. Littman*, 2026 WL 3150829, at *3 (sustaining RCW 80.36.390(9) claim based on four communications sent in a single week). Whether the third message, an image that accompanied the second, FAC ¶¶ 38, 41, was itself a solicitation does not matter.

## V. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss or, to the extent the Court finds any claim deficiently pleaded, permit Plaintiff leave to amend.

Date: October 28, 2026

Respectfully submitted,

By: <u>*/s/ Anthony Paronich*</u>
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
T: (617) 485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff and Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on [November __, 2026], I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Anthony Paronich
Anthony I. Paronich

LOCAL RULE CERTIFICATION: I, Anthony I. Paronich, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ Anthony Paronich
Anthony I. Paronich