**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| AMEENA HUSSAIN,<br>on behalf of herself and<br>others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MORTGAGEPROS, LLC<br><br>Defendant. | Case No. 2:26-cv-12618-MAG-APP |

**DEFENDANT MORTGAGEPROS, LLC'S REPLY**
**IN FURTHER SUPPORT OF MOTION TO DISMISS**

Defendant MortgagePros, LLC ("MPros" or "Defendant") submits the following reply brief in further support of its Motion to Dismiss (ECF No. 11; the "Motion") the putative First Amended Complaint (ECF No. 9; "Complaint") and in response to Plaintiff Ameena Hussain's ("Hussain" or "Plaintiff") opposition to the Motion (ECF No. 12; the "Opposition").

## ARGUMENT

### I. 47 U.S.C. § 227(c)(5) DOES NOT APPLY TO TEXT MESSAGES

#### A. § 227(c)(5) Unambiguously Excludes Text Messages

47 U.S.C. § 227(c)(5) does not include the words "text message," "message," or even telephone solicitation (which is statutorily defined to includes messages). Yet Plaintiff claims that a plain reading demonstrates the provision's applicability to text messages.

In support, Plaintiff points to the 1991 Webster Dictionary definition of "call," which was defined to mean "to get or try to get into communication by telephone." Several courts have recently addressed the flaws in this reasoning. First, it is premised on the definition of the verb "to call" despite the fact that § 227(c)(5) uses the term "telephone call" as a noun. That error results in both

substituting the broader definition of the verb "to call" for the narrower noun "telephone call," while also altogether removing the word "telephone" as a modifying adjective of "call." But "telephone call" is the term that courts are required to interpret, not "call." For this reason, the only Circuit Court to squarely address the issue rejected the precise reasoning Plaintiff relies on and concluded that text messages are not telephone calls for the purposes of § 227(c)(5)'s right of action. *See Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 535-36 (7th Cir. 2026).

Moreover, for a simpler reason excluding text messages from the term "telephone call" remains faithful to both a plain reading of the statutory text and the contemporaneous understanding of what a telephone call was in 1991. Because text messages do not reproduce sound, they could not plausibly be understood as telephone calls at the time of the TCPA's enactment. *See Bronstin v. Happy Cabbage Analytics, Inc.*, No. 1:25-CV-01083, 2026 U.S. Dist. LEXIS 248072, at *11 (M.D. Pa. Oct. 29, 2026); *McGee v. MortgagePros, LLC*, No. 8:26-cv-00170-BCB-JMD, ECF No. 16 (D. Neb. Oct. 6, 2026); *Radvansky v. 1st Class Med.*, 2026 WL 2858562 (D. Co. Sept. 23, 2026).

Finally, it is imperative to reject Plaintiff's interpretation to avoid the absurd results that await at the bottom of the slippery slope she invites the Court down. For if all that is required to come within the definition of "telephone call" is an attempt to communicate with a person by a telephone, as Plaintiff suggests, then email would unquestionably be subject to TCPA regulation because in the year 2026 nearly every cellular telephone capable of sending text messages is also capable of sending email. But it is as "farcical to believe that anyone would confuse an email for a telephone call" "as it is for anyone to confuse a text message for a telephone call." *Mossbruger*

*v. FRCEI Properties*, 3:26-cv-889-O, ECF No. 17 (N.D. TX Oct. 31, 2026); *see also Facebook v. Duguid*, 592 U.S. 395 (2021) (rejecting expansive interpretation of the TCPA to account for technological advances).

MPros' Motion must be granted because Congress meant what it said in limiting the right of action in § 227(c)(5) only to recipients of telephone calls.

B. <u>Plaintiff's Authority is Inapposite and Unpersuasive</u>

At the same time that Plaintiff asserts that the *Steidinger* decision is an outlier, unpersuasive, and that the Court's reasoning "does not hold up," she relies chiefly on Ninth Circuit authority to support her argument. But not only is that authority non-binding, it is inapposite and unpersuasive. Most notably, neither *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) nor *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026) required the Ninth Circuit to reach the question of whether text messages are telephone calls for purposes of § 227(c)(5). Both cases concerned claims brought under § 227(b).

Plaintiff also points to *Dovberg v. Haller Enterprises, Inc.* 2026 WL 3152723 (E.D. Pa. Oct. 21, 2026) and *Arguello v. R.E.S.A., Inc.* 2026 WL 3169713 (N.D. Cal. Oct. 22, 2026). However, the *Arguello* court believed it was constrained by the foregoing Ninth Circuit authority. Moreover, it, like the *Dovberg* court, only looked to the meaning of the word "call" in isolation and never interpreted the term "telephone call." But as noted above, myriad courts have persuasively rejected this reasoning as flawed for removing a key modifier from the term "telephone call." This Court need not follow in the mistake of those courts.

### C. The Surrounding Provisions Confirm MPros' Interpretation

Plaintiff's suggestion that § 227(c)(5) must reach text messages because § 227(b) includes text messages makes little sense. As *Steidinger* observed, § 227(b) and § 227(c)(5) contain different language. *Steindinger,* 82 F.4th at 539. Moreover, the breadth of § 227(b)'s scope (inclusive of its express prohibition against calls to cell phone numbers at § 227(b)(1)(A)(iii)) renders the expansive interpretation favored by Plaintiff a more natural fit for *that section*. In contrast, § 227(c)(5) demonstrates its limited scope in myriad ways – only telephone solicitations implicate the statute (as opposed to any call like in § 227(b)), the recipient must have received at least two calls (even one violative call is insufficient), and those calls must be received within the same 12-month period (two violative calls received 13 months apart is insufficient). It is thus logical to apply a narrower construction to the narrower operative subsection of the TCPA, one in which text messages are excluded from the right of action.

Even within § 227(c) itself, the language of § 227(c)(5) is notably different. While other provisions of § 227(c) consistently use the term "***telephone solicitation***," § 227(c)(5) eschews that statutory term in favor of a narrower term in "***telephone call***." Rather than suggesting that a broader interpretation of telephone call may be appropriate, the use of a narrower term counsels a more restrained interpretation.

Whereas Plaintiff offers an atextual interpretation that is at odds with recent persuasive authority, MPros' remains faithful to the TCPA's text as a whole.

## II. PLAINTIFF IS NOT A "RESIDENTIAL TELEPHONE SUBSCRIBER"

In 1991, a "residential telephone" was a stationary telephone connected to a residence. *See Anthony v. Brian Mktg. Grp.*, 2026 WL 2685650, at *16–17 (S.D. Fla. Sept. 11, 2026); *see also Koeller v. OX AppSec Sec., Inc.*, 2026 WL 2935851, at *6 (E.D. Mo. Sept. 30, 2026); *Lowrey v. Twilio Inc.*, 2026 WL 2958730, at *18–19 (W.D. Va. Oct. 1, 2026). Plaintiff's interpretation of "residential telephone subscriber" only reaches portable cellphones by reading the word "telephone" out of the term. But residential" was included by Congress for a reason. It modifies "telephone," not "subscriber."

Neither do Plaintiff's cited authorities advance her cause. First, her preferred definition comes from the FCC's subscriber-list rules, 47 C.F.R. § 64.2305(d), not the TCPA, and covers a subscriber "to telephone exchange service," words omitted by her ellipses. Opp. at 13. But those omitted words demonstrate that "residential" names a class of exchange service, not a particular use of a phone. Moreover, *Ottensmeyer* concerned the business/residential distinction under Maryland state tariff law, irrelevant for an issue arising under the TCPA.

## III. §227(c)(5) DOES NOT PROVIDE A RIGHT OF ACTION FOR REGULATIONS PRESCRIBED UNDER OTHER STATUTES

§ 227(c)(5) does not reach rules prescribed under other statutes, and Plaintiff's opposition argument effectively concedes the point. She says that § 47 U.S.C. § 201(b) and the Do Not Call Implementation Act "independently authorize" the FCC's do-not-call-rules. Opp. at 18. But § 227(c)(5) is limited to violations of "the regulations prescribed under this subsection." Consequently, a rule whose authority comes from § 201(b) or 15 U.S.C. § 6153 is not one "prescribed under" § 227(c). The authority Plaintiff cites does not merit a contrary conclusion.

She first cites to *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 377-78 (1999), but that case addressed the FCC's general power to regulate; it says nothing about which rules Congress made privately enforceable through the TCPA. She also relies heavily on *Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003), but that case answers a question which MPros' Motion does not raise. Specifically, *Barnhart* held that a missed deadline does not by itself void agency action. But MPros does not ask the Court to invalidate the do-not-call rules. Its Motion asks which statute those regulations were prescribed under. *Barnhart* does not speak to this. The timing of legislative and agency action does, as does the language of the relevant statutes.

She also cites cases adjudicating 47 C.F.R. § 64,1200(c) under § 227(c)(5). But none considered MPros' precise argument, so none addressed § 227(c)'s limits on the FCC's rulemaking authority or the DNC Act's congressional directive that the FCC prescribe DNC regulations. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedent[]." *Webster v. Fall*, 266 U.S. 507, 511 (1925). The only Court to have addressed those issues answered the question in MPros' favor. *Internicola*, 2026 WL 3027393, at *9-10 (M.D. Fla. 2026).

## IV. The State Law Claims Fail

### A. <u>Count IV's Deficiency Warrants Dismissal</u>

Count IV demands "actual damages" and "treble damages." FAC ¶ 97. The CPA awards only "the actual damages sustained" and trebles only those damages. RCW 19.86.090. The statute requires that an actual injury must be an economic loss. *Montes*, 6 Wn.3d 321, 324 (2026). *Littman* and *Harbers* held only that a CEMA violation satisfies injury and causation, not that it proves actual damages. The FAC alleges no economic loss: a phone "occupied"

for a moment and an unquantified draw on "memory and battery," are not lost money or property.

### B. Count III Does Not Allege Repeated Violations

That ¶ 44 is not pleaded on information and belief does not help Plaintiff. It alleges only, as a conclusion, that MPros placed calls "in an effort to market" its services. But the facts offered to support that conclusion - that the calls "immediately followed" the texts - are pled upon information and belief. FAC ¶¶ 47-49.

Nor did MPros "admit" that two texts were solicitations. Opp. at p. 25. It argued that at most two could qualify. ECF No. 11 at p.27. Two messages sent four minutes apart in one exchange are one episode, and Plaintiff's statutory interpretation argument cuts against her twice over. First, it would render "repeated" superfluous to read "repeated violations" to mean any two violations since the Legislature separately opted to measure damages by "each individual violation." RCW 80.36.390(13). Second, pleading one text under both subsection (8) and (9) does not multiply violations, it multiplies theories of liability.

## V. CONCLUSION

For the foregoing reasons, as well as those in MPros' moving papers, MPros respectfully requests that the Court grant its Motion.

Dated: November 10, 2026

**KLEIN MOYNIHAN TURCO LLP**

By: */s/Neil E. Asnen*
Neil E. Asnen
450 Seventh Avenue – 40th Floor
New York, NY 10123
nasnen@kleinmoynihan.com

-and-

Chrisdon F. Rossi (License #: P59305)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
32605 W. Twelve Mile Road, Suite 300
Farmington Hills, MI 48334
Tel: (248) 783-6780 x4813
chrisdon.rossi@qpwblaw.com

*Attorneys for MortgagePros LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 10, 2026, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

*/s/Neil E. Asnen*
Neil E. Asnen